**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         NORTHERN DISTRICT OF CALIFORNIA
7
8   ELDER E. CIFUENTES,                          No. C-11-5635-EMC
9                   Plaintiff,
10          v.                                   **ORDER GRANTING PLAINTIFF'S
                                                 MOTION TO REMAND**
11  RED ROBIN INTERNATIONAL, INC.,               **(Docket No. 10)**
12                  Defendant.
    _____/
13
14
15          Plaintiff's Motion to Remand came on for hearing before the Court on February 3, 2012.

16  Docket No. 10.  For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion to Remand.

17                     **I.    FACTUAL & PROCEDURAL HISTORY**

18          Plaintiff Elder E. Cifuentes filed a class action suit against Defendant Red Robin

19  International, Inc. on October 4, 2011 in the Superior Court of California for the County of

20  Alameda.  Plaintiff alleges that he was involuntarily terminated on May 26, 2011, that he did not

21  receive his final paychecks until June 2, 2011 and June 28, 2011, and that his claims are typical of

22  the class.  Compl. ¶ 19.  Based on these acts, Plaintiff alleges the following causes of action: (1)

23  violation of California Labor Code §§ 201-203 (untimely paid wages at discharge); and (2) violation

24  of Business and Professions Code section 17200, *et seq*.  *See* Class Action Complaint ("Compl.") at

25  1.  Plaintiff also explicitly alleges that the amount in controversy for the class in the aggregate,

26  including the value of any and all monetary and equitable relief and attorneys fees requested by

27  Plaintiff, is less than $5 million and the amount in controversy for each individual class member is

28  less than $75,000.  Compl. ¶ 4.

Defendant removed this case on the ground that the federal court has original jurisdiction under the Class Action Fairness Act ("CAFA") of 2005 because the action involves 100 or more putative class members, the amount in controversy exceeds $5 million (exclusive of interests and costs), and at least one class member is a citizen of a state different from that of at least one defendant.  *See* Docket No. 1 ("Not. of Rem.") at 1, 2, 7.  Specifically, Defendant contends the amount in controversy is $5,430,094.[1]  Docket No. 19 ("Opp.") at 10.

Plaintiff now moves to remand the action to state court, arguing that Defendant's Notice of Removal was jurisdictionally late and that Defendant has failed to meet its burden of proof for removal because it did not establish the CAFA minimum jurisdictional amount to a legal certainty. *See* Docket No. 11 ("Motion").  The assertion of timeliness is without merit.  In his moving papers, Plaintiff alleged that Defendant's Notice of Removal was jurisdictionally late because the CAFA requires removal within 30 days.  28 U.S.C. § 1446(b) (2006); Motion at 1.  Plaintiff personally served the Complaint on Defendant's registered agent for service of process on October 20, 2011. Docket No. 1 ("Not. of Rem.") at 1.  Defendant subsequently filed for removal, 32 days later, on November 21, 2011.  *Id.*  However, the 30-day deadline fell on a Saturday.  Opp. at 1.  Under Federal Rule of Civil Procedure 6 a deadline may be extended until the next day that is not a Saturday, Sunday, or holiday.  Fed. R. Civ. Pro. 6(a)(c).  It appears that Plaintiff has conceded this point because he has not disputed it in his Reply Memorandum.  *See* Docket No. 23 ("Reply").

---

[1] Defendant's calculations contain errors.  In Defendant's Opposition to Motion to Remand, Defendant claims total waiting-time penalties owed from October 4, 2007 through December 25, 2011 is $3,886,804.13.  Defendant also calculates that future damages would be $457,271.07 (total alleged waiting-time penalties divided by 51 months (months in class period) X 6 months).  This would make the current and future potential waiting-time damages $4,344,075.20.  Finally, because the attorneys' fees that can be included in the amount in controversy are typically 25% of the damages, *see Muniz v. Pilot Travel Centers, LLC*, No. CIV. S-07-0325 FCD, 2007 WL 1302504, at *4 n.8 (E.D. Cal. May 1, 2007), Defendant calculates the attorneys' fees in this case to be $1,086,018.80.  However, according to the formulas set forth in Defendant's Opposition, the total waiting-time penalties allegedly owed by Defendant would be $3,898,402.73.  Future damages allegedly owed would be $458,635.62, making the current and future potential waiting-time penalty exposure $4,357,038.35.  Finally, the attorneys' fees would be $1,089,259.59.  Therefore, the total exposure potential that Defendant seeks to allege is actually **$5,446,297.94**.  However, Defendant's errors are insignificant in this matter because the total amount alleged, as calculated by Defendant, still exceeds the $5 million minimum requirement.

United States District Court

For the Northern District of California

With respect to the CAFA jurisdictional amount, Plaintiff has calculated the total amount in controversy to be $4,776,825 and states that Defendant's computations used to show the amount in controversy exceeds $5 million are not based on actual evidence. Not. of Rem. at 9, 14.  Thus, according to Plaintiff, Defendant has failed to show the amount in controversy exceeds $5 million to a legal certainty as required by *Lowdermilk v. United States Bank National Association*.  479 F.3d 994, 1000 (9th Cir. 2007).

## II.   DISCUSSION

A.   Legal Standard

The CAFA confers federal courts jurisdiction over actions in which the amount in controversy exceeds $5 million, and in which any member of the plaintiff class is a citizen of a state different from any defendant, unless at least two thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed.  28 U.S.C. §§ 1332(d), 1453 (2006).  At issue in the instant case is the amount in controversy requirement. *See* Motion at 9.

The burden of establishing removal jurisdiction under the CAFA lies with the proponent of federal jurisdiction. *Id.* at 997 (citing *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006)).  In *Abrego Abrego*, the Ninth Circuit identified three different scenarios concerning the level of proof the proponent must meet.  443 F.3d at 683.  First, when the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy requirement has been met.  *Id.*  Second, if the plaintiff alleges damages greater than the minimum amount in controversy requirement, the requirement is presumptively satisfied unless it appears to a legal certainty that the claim is actually for less than the jurisdictional minimum.  *Id.* at 683 n.8.  Finally, the third scenario exists when the plaintiff's complaint alleges damages *less* than the jurisdictional minimum.  *Id.*  However, in *Abrego*, the Ninth Circuit did not decide what standard of proof would be required when the third scenario was at issue.  *Id.*

Shortly thereafter, in *Lowdermilk*, the Ninth Circuit concluded that when a plaintiff alleges that the amount in controversy is less than the jurisdictional minimum of $5 million required by the

United States District Court

For the Northern District of California

CAFA, the defendant must show with "legal certainty" that *more* than $5 million is in controversy.[2] *Lowdermilk*, 479 F.3d at 999; Motion at 8; Opp. at 3.  Given that federal courts are courts of limited jurisdiction and plaintiffs are "masters" of their complaints, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court. *Id.*  "Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction."  *Id.* at 999.

Although difficult to define, the "legal certainty" standard establishes that defendants must provide enough "concrete evidence . . . to estimate" the actual amount controversy.  *Id.* at 1000.  The Ninth Circuit has said that the "legal certainty" standard sets "a high bar for the party seeking removal, but it is not insurmountable."  *Id.*

In *Lowdermilk*, the plaintiff filed a class action suit in state court alleging waiting-time penalties for failure to pay wages due immediately upon termination.  *Id.* at 996.  Although the plaintiff alleged a sum that was "in total, less than five million dollars," the defendant employer removed the state action to federal court under the CAFA.  *Id.*  The Ninth Circuit found that the defendant employer's calculation of the amount in controversy was poorly supported by evidence and was based on various unsupported assumptions.  *See id.* at 1002.  The court found that the defendant employer's removal papers improperly assumed that all employees in the class would be entitled to receive the maximum damages of 30 days of penalty wages because "[m]any employees may have been paid only a few days late and, consequently, would be entitled to fewer days of penalty wages."  *Id.* at 1000.  Furthermore, the defendant employer did not specify how many employees would be members of the class.  *Id.*  Because the defendant left the court to speculate as to the size of the class, whether the class members actually qualified for penalty wages, and the

---

[2] In *Ray v. Wells Fargo Bank, N.A.*, the District Court for the Central District of California distinguished between *Lowdermilk* and *Guglielmino v. McKee Food Corp.* No. CV 11-01477 AHM, 2011 U.S. Dist. Lexis 53155, at *6-7 (C.D. Cal. May 9, 2011).  While the plaintiff in *Lowdermilk* specifically limited its aggregate claim to less than $5 million including all forms of relief such as attorneys fees, the plaintiff in *Guglielmino* only limited the claim to damages.  *Id.* at *12-13.  In the instant case, Plaintiff has specifically limited his aggregate claim to less than $5 million.  Compl. ¶ 4. Thus, *Lowdermilk* applies.

United States District Court

For the Northern District of California

1  amount of unpaid wages owed, the court concluded that the defendant failed to establish with a legal

2  certainty that the amount in controversy exceeded the CAFA's minimum requirement.  *Id.* at 1002.

3  Thus, "absent more concrete evidence, it [was] nearly impossible to estimate with any certainty the

4  actual amount in controversy."  *Id.* at 1001.  The Court in *Campbell v. Vitran Express, Inc.*, also

5  stated that under the legal certainty standard, a calculation must be based on concrete evidence as

6  compared to the less stringent requirements in cases involving the preponderance of the evidence

7  standard. No. CV-10-04442 RGK, 2010 WL 4971944, at *3 (C.D. Cal. August 16, 2010).

8  B.       Application of the "Legal Certainty" Standard

9        Like the plaintiff in *Lowdermilk*, Plaintiff disputes the calculations used by Defendant in this

10  case to show that the amount in controversy for the class exceeds the $5 million minimum

11  requirement under the CAFA.  Motion at 9.  Defendant has provided some specific evidence used in

12  computing the total amount in controversy, but Plaintiff contends that its calculations are

13  nonetheless based on assumptions and speculation that skew the calculations.  *Id.* at 10.  Thus,

14  Plaintiff asserts that Defendant has failed to establish the amount in controversy to a legal certainty.

15        1.       Defendant's Calculations of the Amount in Controversy

16        An amount in controversy "is simply an estimate of the total amount in dispute, not a

17  prospective assessment of defendant's liability."  *Lewis v. Verizon Comm'cs, Inc.*, 627 F.3d 395, 400

18  (9th Cir. 2000) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in

19  controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the

20  amount that will be put at issue in the course of the litigation.").  Relying on this principle,

21  Defendant contends that it need not calculate the amount in controversy in such a way that it

22  essentially concedes liability.

23        Plaintiff alleges that Defendant failed to pay timely wages upon the termination of the

24  employment of putative class members in violation of California Labor Code Sections 201-203.

25  Compl. ¶ 8(c)(ii).  Plaintiff alleges these claims on behalf of a putative class of employees of

26  Defendant who were employed anywhere in California from October 4, 2007 until the date of

27  certification and who were discharged or resigned.  *See* Compl. ¶ 7.  Pursuant to these allegations,

28  Defendant estimates that there are approximately 14,440 putative class members.  Opp. at 5; *see also*

1    Docket No. 22 ("Morton Decl.") at 3-4.  Plaintiff also contends that his claim is typical of other class

2    members.  Complaint ¶ 8(b).

3          Section 201 requires that employers pay final wages to involuntarily terminated employees

4    immediately upon termination, while section 202 requires employers to pay final wages to

5    employees that have resigned within 72 hours of the end of their employment unless advance notice

6    is provided.  Cal. Labor Code § 201, 202.  Under section 203, employers who willfully fail to pay

7    such final wages on a timely basis must pay penalty wages the employee for each day the employer

8    is late, up to a maximum of 30 days.  Cal. Labor Code § 203.  Thus, Defendant also provides

9    evidence as to the number of individuals for each position that were involuntarily terminated or

10   resigned during the class period, as well as the average wages and hours worked for each position.

11   *See* Morton Decl.; Docket No. 21 ("O'Rourke-Smith Decl.").

12         Using Plaintiff's allegations, as well as the estimated class size, Defendant concluded that the

13   amount in controversy exceeded $5 million.  Opp. at 10.  Defendant based its calculations of the

14   potential exposure for involuntarily terminated and resigned employees on Plaintiff's assertions that

15   his claims regarding an 8-day delay for payment of final wages was typical of the class.  Defendant

16   argues Plaintiff asserts his claims are "typical" of the class such that Defendant can extrapolate his

17   experience to the entire class.  *Id.* at 12.  Defendant also asserts it was conservative in using the

18   shortest delay alleged by Plaintiff who alleges one check was more than 30 days late.

19         With this evidence, Defendant calculated the estimated penalty wages for involuntarily

20   terminated employees.  It calculated the number of involuntarily terminated employees, assumed 8

21   days of delay, and applied the employees' applicable rate of pay.  *See* Opp. at 6-10.  For resigned

22   employees, Defendant used the same method of calculation except that it applied 5 days of alleged

23   delay (given the 72 hour grace period).  *Id.*  As noted above, Defendant argues that its calculations

24   are a "conservative estimate," unlike the defendant in *Lowdermilk*, who assumed the 30-day

25   maximum to calculate penalties.  Opp. at 11; Compl. ¶ 19.  Defendant also includes in its calculation

26   penalties for an additional 6 months after this suit was filed to include all former employees that may

27   be affected from the date of the complaint's filing through the date of class certification (which

28   coincided with the class period alleged by Plaintiff).  Opp. at 10.

United States District Court

For the Northern District of California

2.     <u>Defendant Fails to Satisfy the Legal Certainty Standard</u>

Plaintiff argues that like the defendant in *Lowdermilk*, Defendant has failed to show with "legal certainty" that the amount in controversy in this case exceeds the $5 million minimum. Motion at 8.  The Court agrees.

First, Defendant has not provided any evidence as to "(i) which employees have suffered the wage and hour violations alleged in the complaint or (ii) the amount of damages suffered by such affected employees."  *Id.* at 9-10.  In calculating the amount in controversy, Defendant assumed

> (i) that all employees in the proposed class failed to receive final wages on a timely basis, as required by Labor Code Section 201-202; (ii) that all involuntarily terminated and quitting employees suffered exactly the same delay (8 and 5 days, respectively) in receiving their final wages; and (iii) that all such employees worked the same amount of hours and earned the same amount of wages.

*Id.* at 10.  While the Court agrees that Defendant need not prove its own liability in calculating the amount in controversy by specifying which employees failed to receive timely wages, and how long the delay was for each, *see Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010), Defendant must still establish the amount in controversy to a legal certainty that is based on concrete evidence, *Lowdermilk*, 479 F.3d at 1001; *Campbell*, No. CV-10-04442, 2010 WL 4971944, at *3.

Defendant failed to meet the burden.  First, Defendant assumed without proffering evidence that putative class members experienced an average 8-day delay without accounting for the possibility that a disproportionate number may have experienced a shorter delay or no delay at all. *See Lowdermilk*, 479 F.3d at 1000.  This assumption about the average delay was based solely on Plaintiff's single allegation, rather than evidence  That is not permissible under the legal certainty test.  *Fletcher v. The Toro Co.*, No. 08-CV-2275 DMS, 2009 U.S. Dist. LEXIS 126693, at *22-23 (S.D. Cal. Feb. 3, 2009) (court held that defendant did not establish the amount in controversy to a legal certainty by simply "taking as true the allegations in the [c]omplaint . . . .").  Defendant has access to evidence as to the amount in controversy but presented none.  It could have estimated damages based on its own data without conceding its own liability.  For instance, instead of extrapolating from Plaintiff's singular allegation to project an average delay for the entire class,

**United States District Court**

For the Northern District of California

1   Defendant could have taken a sampling of class members to calculate a more informed estimate.  As

2   presented, Defendant's calculation is based on too thin a reed to satisfy the high bar of the legal

3   certainty standard.  *See Ortiz v. Menu Foods, Inc.*, 525 F. Supp. 2d 1220, 1224 (D. Hawaii 2007)

4   ("Defendant's calculations call for too much extrapolation and speculation" for the court to

5   determine damages to a legal certainty.).

6        Defendant's attempt to rely on Plaintiff's allegation that his claims are "typical" of the class

7   is of no help.  The fact Plaintiff alleged his claims are "typical" so as to satisfy requirements for

8   class certification does not mean that the fact and number of days of delay for each class member are

9   alleged to be identical to the Plaintiffs.  Typicality in the class certification context simply means

10  that representative claims are "reasonably coextensive with those of absent class members; they

11  need not be substantially identical."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007)

12  (citing *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "Some degree of

13  individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality."

14  *Dukes*, 509 F.3d at 1184.  Defendant overreads Plaintiff's allegation.

15       Defendant makes a second assumption that it will continue to violate Labor Code Sections

16  201 and 202 to the same degree even after the filing of the complaint.  It is not reasonable for

17  Defendant to assume it will continue to violate California Labor Code sections 201-230 by failing to

18  pay timely wages upon termination even after the filing of this pending lawsuit.  It is unlikely that a

19  defendant will continue to risk violating the law for six months after being put on notice by a

20  lawsuit.  As above, Defendant cannot rely on Plaintiff's allegations that the class period

21  encompasses this period – reliance on allegations alone does not satisfy the legal certainty standard.

22  Legal certainty must be based on concrete evidence, not allegations.

23       The "legal certainty" standard sets a very high, although not "insurmountable," threshold for

24  defendants.  Plaintiffs are the "master[s] of [their] complaints" and can plead to avoid federal

25  jurisdiction to remain in state court if they wish.  *See Lowdermilk*, 479 F.3d at 998-99.  Here,

26  Plaintiff has effectively relinquished its claim to damages exceeding $5 million.  As such, Defendant

27  must still overcome the strong presumption against removal by satisfying the legal certainty

28  standard.  Defendant has failed to do so here.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion to Remand this matter. The case is remanded to the state court from which it was removed, and the Clerk of the Court is directed to close the file in this case.

This order disposes of Docket No. 10.


IT IS SO ORDERED.


Dated:  March 1, 2012

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

9